IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

Fall 2021 Term

_____

No. 20-0024
_____

FILED
November 19, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

FRANK A.,
Petitioner Below, Petitioner

v.

DONNIE AMES, Superintendent,
Mt. Olive Correctional Complex,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Harrison County
The Honorable Thomas A. Bedell, Judge
Civil Action No. 16-C-82-2

AFFIRMED, IN PART; REVERSED, IN PART, AND
REMANDED WITH DIRECTIONS

_____

Submitted: September 14, 2021
Filed: November 19, 2021

Matthew D. Brummond, Esq.
Public Defender Services
Appellate Advocacy Division
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
William E. Longwell, Esq.
Assistant Attorney General
Holly M. Flanigan, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

CHIEF JUSTICE JENKINS concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

JUSTICE ARMSTEAD concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review."  Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

2.      "There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007).

3.      "'It is the three-term rule, W. Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution.' Syllabus point 1, *Good v. Handlan*, 176 W. Va. 145, 342

S.E.2d 111 (1986)." Syl. Pt. 2, *State ex rel. Porter v. Farrell*, 245 W. Va. 272, 858 S.E.2d 897 (2021).

4.     "A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial." Syl. Pt. 2, *State v. Foddrell,* 171 W.Va. 54, 297 S.E.2d 829 (1982).

5.     "In order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict." Syl. Pt. 2, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

6.     "'A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syl. pt. 5, *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234 (1981)." Syl. Pt. 1, *State v. Haid*, 228 W. Va. 510, 721 S.E.2d 529 (2011).

7. ""An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R. Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy." Syl. Pt. 6, *State v. Wallace,* 205 W.Va. 155, 517 S.E.2d 20 (1999).' Syl. Pt. 5, *State v. Haines,* 221 W.Va. 235, 654 S.E.2d 359 (2007)." Syl. Pt. 4, *Ballard v. Dilworth*, 230 W. Va. 449, 739 S.E.2d 643 (2013).

8. "Variances (between indictment and proof) are regarded as material in criminal cases only when they mislead the defendant in making his defense, and may expose him to the danger of being again put in jeopardy for the same offense." Syl. Pt. 2, in part, *State v. Nelson*, 121 W. Va. 310, 3 S.E.2d 530 (1939).

9. "To demonstrate that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, a defendant must first introduce substantial evidence of actual prejudice which proves he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was or will be likely affected." Syl. Pt. 4, *State ex rel. Knotts v. Facemire*, 223 W. Va. 594, 678 S.E.2d 847 (2009).

10. "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 3, in part, *Hatcher v. McBride*, 221 W. Va. 5, 650 S.E.2d 104 (2006).

11. "''The plain error doctrine of W. Va. R. Crim. P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result." Syllabus Point 2, *State v. Hatala*, 176 W.Va. 435, 345 S.E.2d 310 (1986).' Syl. Pt. 4, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987)." Syl. Pt. 3, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016).

12. "'A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases

are inconsistent, they are expressly overruled.' Syllabus point 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995)." Syl. Pt. 7, *State v. White*, 228 W. Va. 530, 722 S.E.2d 566 (2011).

13.     "The defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless."  Syl. Pt. 6, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977).

14.     "'A critical stage of a criminal proceeding is where the defendant's right to a fair trial will be affected.' Syllabus Point 2, *State v. Tiller,* 168 W.Va. 522, 285 S.E.2d 371 (1981)." Syl. Pt. 5, *State v. Brown*, 210 W. Va. 14, 552 S.E.2d 390 (2001).

15.     "'Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.' Syllabus point 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972)." Syl. Pt. 7, *State v. Tyler G.*, 236 W. Va. 152, 778 S.E.2d 601 (2015).

16. "'"'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his [or her] affidavit that [the defendant] was diligent in ascertaining and securing [the] evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side. Syl. pt. 1, *Halstead v. Horton,* 38 W.Va. 727, 18 S.E. 953 (1894)." Syllabus, *State v. Frazier,* 162 W.Va. 935, 253 S.E.2d 534 (1979).' Syllabus point 3, *In re Renewed Investigation of State Police Crime Laboratory, Serology Division,* 219 W.Va. 408, 633 S.E.2d 762 (2006)." Syl. Pt. 4, *State ex rel. Smith v. McBride*, 224 W. Va. 196, 681 S.E.2d 81 (2009).

17. "Before prosecutorial error can occur under the doctrine of suppression of evidence, it must be shown that the evidence suppressed would be relevant to an issue at the criminal trial." Syl. Pt. 4, *State v. Bolling,* 162 W.Va. 103, 246 S.E.2d 631 (1978).

18. "'"An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Syllabus Point 3, *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983).' Syllabus Point 2, *State v. Childers,* 187 W.Va. 54, 415 S.E.2d 460 (1992)." Syl. Pt. 9, *State v. George W.H.*, 190 W. Va. 558, 439 S.E.2d 423 (1993).

19. "Any retroactive application of the supervised release statute to an individual who committed any of the enumerated sex offenses prior to the effective date of the supervised release statute violates the constitutional prohibition against ex post facto laws set forth in article III, section 4 of the West Virginia Constitution and Article I, Section 10 of the United States Constitution." Syl. Pt. 3, in part, *State v. Deel*, 237 W. Va. 600, 788 S.E.2d 741 (2016).

20. "In order to avoid the constitutional prohibition against ex post facto laws, West Virginia Code § 62-12-26 must not be applied to those individuals who committed any of the enumerated sex offenses set forth in the supervised release statute prior to the date the supervised release statute became effective regardless of any contrary language contained in West Virginia Code § 62-12-26." Syl. Pt. 4, *State v. Deel*, 237 W. Va. 600, 788 S.E.2d 741 (2016).

**WOOTON, Justice:**

The petitioner, Frank A. ("the petitioner"), appeals from the judgment of the Circuit Court of Harrison County, West Virginia, which denied habeas corpus relief from the petitioner's 2013 conviction on four counts of first-degree sexual abuse and related offenses against his daughter, A.A.[1] The underlying proceedings were commenced on February 22, 2016, with the filing of a 200-page pro se petition for a writ of habeas corpus, then came to a virtual standstill for more than two years as the petitioner refused to cooperate with a succession of appointed counsel and ultimately forbade the filing of an amended petition on his behalf until certain of his demands were met.[2] Ultimately, the circuit court ordered counsel to file an amended petition, over the petitioner's objection and without his approval, raising all issues that counsel deemed to be viable. At the same time, the court held that no *Losh*[3] grounds would be deemed waived by counsel's failure to raise them in the amended petition, and granted the petitioner leave to argue and provide evidentiary support for any such issues on his own behalf. The court then set an omnibus hearing at which both the petitioner and counsel were to argue their respective issues and present any relevant evidence in support of such issues.

---

[1] Consistent with our practice in cases involving sensitive matters, we refer to the victim, her siblings, and all parties by their respective initials. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] *See* text *infra*.

[3] *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

1

At the omnibus hearing, neither the petitioner nor counsel presented any witnesses or offered any evidence to supplement the court file in the underlying criminal case and the court file in a related 2004 criminal case. *See* text *infra*. Thereafter, by order entered on December 20, 2019, the court entered a thirty-four-page order denying relief on all grounds. This appeal followed.

## I. FACTS AND PROCEDURAL BACKGROUND

In order to understand many of the petitioner's arguments, it is necessary to review the historical antecedents of this case. The petitioner and his then-wife, Juanita W., had four children: two sons, J.A. and S.A., and two daughters, A.A. and C.A.[4] On or about August 3, 2003, A.A. disclosed that the petitioner had sexually abused her on multiple occasions, leading to his arrest on or about August 10, 2003, and his indictment on January 6, 2004. All acts of abuse set forth in the 2004 indictment were alleged to have occurred between February and March, 2002. While the case was pending, A.A. recanted her allegations, and the indictment was ultimately dismissed on the State's motion, without prejudice.[5] The petitioner alleges that A.A. recanted because she had made the allegations

---

[4] The record is unclear as to whether a fifth child, a son, C.W., was fathered by the petitioner or by Paul W., who was Juanita W.'s boyfriend off and on during her marriage to Frank A. and subsequently became her husband and the children's stepfather.

[5] The circuit court found that "[t]he alleged victim in this case has learning disabilities, and to some degree may have been motivated by spite or anger . . . The alleged victim also may have been manipulated in continuing on with these allegations." Notwithstanding these findings, the court dismissed the indictment without prejudice, although the State had moved to dismiss with prejudice.

in order to please her mother and her mother's boyfriend (later her stepfather), despite the fact that the petitioner was innocent of any wrongdoing. At the petitioner's trial in 2013, however, A.A. testified that she had recanted the 2002 allegations because "I just didn't want to face him." In this regard, although the petitioner called Terry Walker of the West Virginia Department of Health and Human Resources ("DHHR"), Child Protective Services ("CPS"), as a witness at trial to hammer home the fact of the recantation – a ploy which was not very successful, as Ms. Walker was aware of the recantation but had not been present when it happened – Ms. Walker testified on cross-examination that in her experience, children recant for very different reasons and that a recantation does not mean the sexual assault or abuse never occurred.

According to A.A..'s undisputed testimony, by 2004 Juanita W. was living with her long-term boyfriend, Paul W., and all of the children were living with the pair. During this time frame Juanita W. filed a petition for divorce from the petitioner, which she subsequently dismissed for reasons not relevant to this case. Thereafter, in 2005, the petitioner filed a petition for divorce. This case became a prolonged custody battle which went on for years, finally concluding in 2008. Significantly, during the pendency of the divorce proceedings Juanita W. alleged that the petitioner had sexually assaulted or abused his son J.A. and his daughter C.A. Both children were interviewed twice in February, 2005, at a Child Advocacy Center ("CAC") in Braxton County. In the initial interviews, neither child disclosed any sexual abuse. During the second interviews, which were performed by a law enforcement officer, the children did disclose sexual abuse; however, both indicated

3

that their mother and Paul W. had coached them in what to say. These interviews were taped, and the videos were made part of the record in the divorce/custody proceeding.

Several aspects of these taped interviews are critical to the petitioner's claims in this proceeding. First, the petitioner alleges that the videos were not turned over to him as discovery in the 2013 criminal proceedings, despite specific discovery requests by him that would have encompassed this evidence. Second, the petitioner claims that the videos were exculpatory and/or favorable, in that evidence showing J.A. and C.A. were coerced and coached by Juanita W. and Paul W. in 2005 would bolster the petitioner's trial defense that A.A. had been similarly coerced and coached in 2003 and then again a decade later. Third, the petitioner claims that the videos were significant impeachment evidence to rebut A.A.'s claim that she had recanted because "I just didn't want to face him." Fourth, the petitioner claims that the videos were significant to his claim of newly discovered evidence, *see* text *infra*, specifically, that Paul W. was found guilty in 2014 of sexually abusing another one of the children. Petitioner posits that for many years Paul W. had coached all of the children, including A.A., to accuse the petitioner of sexual abuse, all in order to deflect blame from himself.

In or about May, 2010, Juanita W. filed an incorrigibility petition alleging that her son J.A., then thirteen years old, was beyond her parental control. Attorney Heidi Sturm was appointed to represent J.A., who expressed concern to his counsel that whatever the outcome of the incorrigibility proceedings, he did not want to go home because "he

4

was afraid he [would] do something to his sister."[6] On February 14, 2012, Detective David Wygal, then a member of the Clarksburg Police Department, was contacted by Juanita W., who had been asked by J.A. to notify the police of his allegations that the petitioner had sexually assaulted and abused him on numerous occasions. During the course of his investigation, Detective Wygal learned of the earlier allegations concerning A.A. and expanded the scope of his investigation to include her as well. Thereafter, on May 7, 2013, the petitioner was indicted on two counts of first-degree sexual assault and two counts of sexual abuse by a parent, guardian, or custodian against a minor child, his son J.A.; two counts of second-degree sexual assault and two counts of sexual abuse by a parent, guardian, or custodian against a minor child, his son S.A.; and two counts of first-degree sexual abuse[7] and two counts of sexual abuse by a parent, guardian, or custodian[8] against a minor child, his daughter, A.A. All offenses set forth in the indictment were alleged to have occurred between January __, 2003 and December __, 2004.

On December 9, 2013, the case proceeded to trial. At trial, the State called five witnesses and the defense called three, including the petitioner – who testified on his own behalf at length, largely untethered to the questions propounded on either direct or

---

[6] J.A. was ultimately placed in the Chestnut Ridge Sexual Offenders Program.

[7] W. Va. Code § 61-8B-7 (2020).

[8] W. Va. Code § 61-8D-5 (2020).

cross-examination.[9] A.A. testified to several incidents in which the petitioner had sexually abused her. She testified that when she was thirteen,[10] "I'd be asleep in a room and he would come in and grab me by my hair and pull me through a hallway into the kitchen to a laundry room and then he'd start fondling me[,]" putting his hand underneath her clothing and touching her "crotch" and "boobs." This happened when the family was living in a trailer in Enterprise, West Virginia. She finally disclosed the abuse to her mother, Juanita W., when she was fifteen, following another incident in the trailer when the petitioner "came up to me and spread my legs apart and told them[11] [inaudible] ass." *See* text *infra*. After this disclosure, there was no more abuse.

Detective Wygal testified that his investigation began on February 14, 2012, when Juanita W. approached him at the request of J.A. As noted previously, upon learning of the earlier accusations made by A.A. against the petitioner, Detective Wygal broadened his investigation to include not only J.A. but also A.A. and ultimately S.A, as well. Significantly, for purposes of this appeal, Detective Wygal testified that petitioner and his family were living in Maple View Apartments in Clarksburg, West Virginia, during the

---

[9] In his closing argument, defense counsel told the jury that "I can't control him on the stand. You know, that's part of his challenge. I mean, nobody can control him. I mean, you saw it for yourself. You know, he can be nonresponsive and go off like that. It's part of his limitations, his challenges that he has had his whole life."

[10] A.A. was born on May 18, 1988, and therefore would have turned thirteen on May 18, 2001.

[11] Three other individuals were in the kitchen at the time.

year 2003, and that the offenses involving A.A. "happened in 2003, *allegedly*." (Emphasis added). However, A.A. disputed this timeline in her testimony. She testified that the petitioner's sexual abuse of her started when she was thirteen and continued until she was fifteen, thus placing the crimes in a time frame from May 18, 2001 to May 18, 2003. Further, although she did not dispute that the family lived in Maple View Apartments in 2003, she testified that "I never stayed there, really[,]" but rather lived with her grandmothers during that time. She testified unequivocally that all of the offenses, including the final one, occurred in a trailer in Enterprise, West Virginia, where the family lived prior to the move to Maple View Apartments in 2003.

The foregoing testimony of A.A. and Detective Wygal was the entirety of the State's evidence elicited to prove the four counts of the indictment involving A.A. The State's other witnesses, Heidi Sturm, J.A., and Terry Sigley, all gave testimony relevant to the four counts involving J.A. and the four counts involving S.A.

S.A. refused to appear, and at the conclusion of the State's evidence, the court dismissed Counts 5-8, all relating to S.A., with prejudice. At the conclusion of all the evidence, and following the instructions of the court and the arguments of counsel, the jury returned verdicts of not guilty on Counts 1-4, all relating to J.A., and guilty on Counts 9-12, all relating to A.A. Thereafter, following the court's denial of the petitioner's post-trial motions, the petitioner was sentenced to an effective term of twenty to forty years imprisonment, to be followed by a twenty-five-year period of extended supervised release,

the latter imposed pursuant to West Virginia Code § 62-12-26 (2003). On appeal,[12] this Court affirmed. *State v. Frank A.*, No. 14-0439, 2015 WL 867912 (W. Va. Feb. 27, 2015) (memorandum decision).

On February 22, 2016, the petitioner filed a pro se petition for writ of habeas corpus in the Circuit Court of Fayette County, C/A 16-C-82. The 200-page petition, subsequently transferred to the Circuit Court of Harrison County, contained eleven grounds in support of the petitioner's prayer for relief. The docket sheet for the habeas case shows hundreds of entries, including approximately 2000 pages of written material generated by the petitioner –who had at least five and possibly seven different lawyers during the course of the proceedings[13] and demanded the termination of each one in turn. He also filed two motions to recuse the circuit judge, both groundless and therefore unsuccessful.

Following transfer of the case to Harrison County, counsel was appointed to file an amended petition on the petitioner's behalf. Thereafter, the habeas case almost immediately went off the tracks, beginning with a sequence of events that started on May 27, 2016, when defense counsel filed a "Motion for Access to Records in the Custody of

---

[12] As grounds for appeal, the petitioner alleged evidentiary error in the admission of testimony before the grand jury; error in going forward with trial where, petitioner alleged, his mental status did not allow him to understand (and presumably accept) a plea offer; and various evidentiary errors in the admission of testimony at trial.

[13] The 3,857-page appendix record is not entirely clear on this point.

8

the State." In relevant part, the records sought were contained in the petitioner's divorce case file, which spanned the years 2005 to 2008; included in those records were video recordings of interviews of two of the petitioner's children, S.A. and C.A., who alleged sexual abuse on the part of the petitioner but indicated that their mother and stepfather had coached them on what to say. The circuit court initially denied the motion as not having been filed in compliance with the procedures set forth in Rule 7 of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, which requires leave of court to "invoke the Processes of discovery available under the West Virginia Rules of Civil Procedure[.]" However, on October 28, 2016, following a barrage of letters and motions filed by the petitioner, the court entered an "Agreed Order Allowing Petitioner to Conduct Limited Discovery." The order granted access to records contained in two family court case files (divorce and domestic violence); documents, audio, video, and any other media in the possession of the West Virginia Department of Health and Human Resources related to alleged abuse and neglect of the children; and a tape-recorded interview in the 2004 case containing an interview between the assistant prosecuting attorney and A.A. The order specified that these records would be turned over to defense counsel, who in turn would furnish copies to the State, and that "both counsel shall keep the information confidential and *shall not share its contents with anyone except their legal staff.*" (Emphasis added).

Simply put, the petitioner flatly refused to accept the fact that pursuant to the court's order, his counsel could discuss the materials with him generally but could not

9

provide him with his own copies of the documents and video, or even show them to him. He demanded the termination of his lawyer, and thereafter the termination of three more lawyers who were appointed in succession, all on the ground that they were following an order which, in the petitioner's view, was unlawful and had never been agreed to by him.[14] He refused to cooperate with any of his counsel and refused to allow any of them to file an amended petition on his behalf. For that reason, the case remained at a standstill for more than a year,[15] and it appeared that this state of affairs would continue indefinitely because the petitioner's adamant position was that "[t]hese proceedings . . . will continue when I am given by any counsel that represents me these related documents . . . I mean, if you give me my documents then you can continue being my court lawyer."

On November 12, 2017, the circuit court held a status conference, at which point it granted the petitioner's motion to terminate his latest counsel, despite specifically finding that there was no good cause shown for counsel's discharge. The court, continuing to demonstrate remarkable patience with a difficult litigant, ruled that

> So I'm going to relieve Mr. Mirhoseini of any further responsibilities in this matter. I will attempt and for the record, and based on what you said the last time, Mr. Mirhoseini is your eighth counsel. You've had four retained counsel both for the underlying offense and for the post-conviction habeas

---

[14] He also complained that none of the lawyers would share the discovery with his brothers, nonlawyers, so that the brothers could participate in devising the petitioner's legal strategy.

[15] The petitioner continued to file letters and motions during this time.

corpus, and you'd had three prior habeas counsel that were appointed by the court.

I will endeavor to find counsel that will represent you. I don't know that any counsel I can find at this point is going to do as good a job as Mr. Mirhoseini, but that's a decision that you've made and a position that you've made known clearly to the court.

Now in the event that I cannot find counsel willing to assist you in these matters, I'll enter an order directing that you're to proceed pro se, representing yourself, and the Court - -

FRANK A.: I never agreed to that - -

THE COURT: Okay, Mr. - -

FRANK A.: To represent myself.

The court did ultimately succeed in finding another lawyer, Matthew Victor, to represent the petitioner, and thereafter held two more status conferences on January 2, 2018, and March 22, 2018, in an attempt to restart the long-derailed train.

The petitioner made it clear at the first of these hearings that he was not going to cooperate: "I object . . . I've never communicated with this guy. I've never seen him. I've never talked to him in this prison. I even notified your court and this counsel that I will not speak with this counsel." Further: "I've never talked to him. He sent me two letters asking me to call him collect. I told him I'm not calling – I'm not talking to nobody over this prison phone." Mr. Victor proposed that the court appoint a "standby counsel" – someone the petitioner would agree to talk to – to liaise with the petitioner; however, the court refused to appoint a sixth lawyer. At the second hearing, the petitioner remained

11

intransigent: "like I've told this Court over and over, no counsel will be filing my amended petition before your State court, sir, Your Honor, *until they turn over my records to me*." (Emphasis added). He continued: "This is not going to happen. I ain't going to sign anything with this Court, any *Losh* List, with counsel, until I am given these records."

The circuit court, which had displayed tremendous patience throughout the two-year course of these proceedings, devised a solution to the impasse. He ordered Mr. Victor to file an amended petition, without a verification and without a *Losh* list; ordered that no *Losh* grounds would be deemed waived by virtue of not being included in the amended petition; and informed the petitioner that at the omnibus hearing he would have the ability to testify and to offer evidence in support of any *Losh* grounds he wished to raise. Once again, the petitioner refused to accept the court's orders:

FRANK A.:      No, he's not going to file nothing in my case–

THE COURT:    Okay –

FRANK A.:      He's out of my case immediately now –

THE COURT:    You don't make that choice –

FRANK A.:      Nothing is to be filed in my case.

THE COURT:     You don't make that choice, sir, the Court does, so –

FRANK A.:      He doesn't file nothing in my case.

THE COURT:    Okay, I'll –

FRANK A.:      I object –

12

THE COURT:     Mr. –

FRANK A.:          – to this court. I'll object to that.


On May 30, 2018, Mr. Victor filed an Amended Petition for Writ of Habeas Corpus, and on July 16, 2018, the State filed its Response.  The petitioner filed a flurry of letters and motions, including motions to "retract and revoke past and future action" of Mr. Victor; to "disregard and strike" the Amended Petition; and to reschedule a new omnibus hearing "with appointment of competent counsel." The circuit court denied the motions, and an omnibus hearing was held on August 3, 2018.  Mr. Victor submitted his case on the Amended Petition and brief in support, inasmuch as the court had ordered him to submit these documents but the petitioner had refused to authorize him to do anything else. The State also submitted its case on brief; further, the State and Mr. Victor requested that the entirety of the file in underlying criminal case, as well as the file in the 2004 criminal case, be made a part of the record. The petitioner, having been sworn, gave a statement, but called no witnesses and introduced no evidence in support of his claims.


On December 20, 2019, the circuit court entered its Final Order Denying Petition for Writ of Habeas Corpus Ad Subjiciendum.  On January 13, 2020, the petitioner

filed a pro se Notice of Appeal, followed by a motion for appointment of counsel, which this Court granted.[16] The case has now been briefed, argued, and submitted for decision.

## II. STANDARD OF REVIEW

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

## III. DISCUSSION

In his brief, the petitioner raises fifteen assignments of error. We will first address all issues involving the validity of petitioner's conviction, and then address the sentencing issue.

### **Alleged Brady Violation**

Petitioner alleges that the State violated its duty to disclose exculpatory evidence by withholding the CAC videos of J.A. and C.A., made during the pendency of the petitioner's divorce proceedings, in which the children "accuse their mother and

---

[16] The case was remanded to the Circuit Court of Harrison County for appointment of counsel.

14

stepfather of coaching." According to the petitioner, these videos, if entered into evidence at the trial, would in all likelihood have convinced the jury that A.A. had also been coached and, by necessary implication, was lying. The State responds that the videos had not been withheld; that they were not material in any event, since J.A. and C.A. had said nothing about A.A.; that they would not have affected the jury's verdict as to the charges involving A.A., because the jury acquitted the petitioner on all charges involving J.A., while C.A. was not in any way a part of the proceedings; and that the petitioner would necessarily have known of the existence of the videos and could have obtained them himself, through the exercise of due diligence. *See infra* note 17. In its analysis of the issue, the circuit court made no finding as to whether the videos had been withheld by the State. Rather, the court agreed with the State that the "[p]etitioner was aware of the Child Protective Service's files and even had a supervisor from [CPS] to testify at his trial." The court further found that the videos did not involve A.A., and that the "[p]etitioner was not charged with any crimes against C.A. and the Petitioner was not convicted of the charges involving J.A." Finally, and significantly, the court noted that the petitioner did not introduce the videos into evidence at the omnibus hearing, making it impossible to determine "how the videos would have affected his trial[.]"

We begin with a brief overview of well-established principles governing a claim of suppression of exculpatory evidence by the State. In the seminal case of *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process

15

where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. As the Court succinctly noted, "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Id*. In *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982), this Court held that the *Brady* principle is based not only on the due process clause of the United States Constitution but also on article three, section fourteen of the West Virginia Constitution. *Id*. at 205-06, 286 S.E.2d at 411. In jurisprudence spanning more than half a century, we have faithfully applied *Brady*/*Hatfield*, putting meat on the constitutional bones of those cases as dictated by diverse fact patterns. It is now well settled that

> [t]here are three components of a constitutional due process violation under *Brady* . . . and *Hatfield* . . . : (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007) (citations omitted).[17]

---

[17] The State attempts to expand the second prong of this test by referring to a footnote in which the Court stated that

> "'[w]e will note that evidence is considered suppressed when 'the existence of the evidence was known, or reasonably should have been known, to the government, the evidence was not otherwise available to the defendant through the exercise of reasonable diligence, and the government either willfully or inadvertently withheld the evidence until it was too late for the defense to make use of it.' *United States v. Knight*, 342 F.3d 697, 705 (7th Cir.2003). Under the facts of this case we do not

We examine the facts of this case to determine whether the petitioner has met the three prongs of the *Youngblood* test. First, we agree with the petitioner that the videos were, at the least, "favorable" to the defense, in that the allegations of coaching made by J.A. and C.A. gave some support – albeit tenuous – to the petitioner's testimony that A.A. had been coached as well. *See* Syl. Pt. 4, *State v. Bolling,* 162 W.Va. 103, 246 S.E.2d 631 (1978) ("Before prosecutorial error can occur under the doctrine of suppression of evidence, it must be shown that the evidence suppressed would be relevant to an issue at the criminal trial."); *see also Buffey v. Ballard*, 236 W. Va. 509, 524, 782 S.E.2d 204, 219 (2015) (argument that evidence is not conclusive "confuses the weight of the evidence with its favorable tendency.") (citing *Kyles v. Whitley*, 514 U.S. 419, 451 (1995)). In this regard,

---

believe that, through the exercise of reasonable diligence, Mr. Youngblood would have uncovered the note prior to trial."

*Youngblood*, 221 W. Va. at 331 n.21, 650 S.E.2d at 130 n.21. In the instant habeas petition the circuit court seemingly accepted this argument, denying relief on the petitioner's *Brady* claim based on *Knight*, finding that in the exercise of due diligence the petitioner could have secured the allegedly suppressed evidence, videos made during the course of his divorce proceeding.

It is well settled in our jurisprudence that "language in a footnote generally should be considered obiter dicta which, by definition, is language 'unnecessary to the decision in the case and therefore not precedential.'" *State ex rel. Medical Assurance v. Recht,* 213 W.Va. 457, 471, 583 S.E.2d 80, 94 (2003) (citation omitted). Given our ultimate disposition of the petitioner's *Brady* issue, we find it unnecessary to determine whether this Court in fact adopted the *Knight* rule through a footnote in *Youngblood*. In this regard, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." *State v. Kacenski*, No. 18-0946, 2020 WL 261742, at *2 n.5 (W. Va. Jan. 17, 2020) (memorandum decision) (citing Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965)).

17

the circuit court's opinion may be read to reflect an assessment that the videos would not have been admissible at the petitioner's trial, because no admissions of coaching made by J.A. and C.A. could be used to impeach A.A.'s credibility. We need not determine whether the videos would have been admissible in order to determine whether the evidence was favorable; questions of admissibility are more properly addressed, if at all, in determining whether suppression of the evidence prejudiced the petitioner at trial. *See Youngblood*, 221 W. Va. at 29 n.18, 650 S.E.2d at 128 n.18 ("[S]ome courts have held that the prosecutor's duty to disclose is limited to information which would be admissible as evidence. Other courts have held that the crucial question is whether the material would be likely to lead to admissible evidence as an end-product; if so, the prosecutor has a duty to disclose.") (citing 1 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* 757 (1985)).

We turn now to the second prong of the *Youngblood* test, whether the State suppressed the videos. The parties' briefs on this point are diametrically opposed: the petitioner contends that the videos were not turned over, while the State contends that they were. In support of his position, the petitioner asserts that despite his discovery requests, which would have encompassed this evidence, he "did not receive the videos until the habeas." However, nothing in the appendix record supports this assertion; there are no documents in the case file showing what the State did or did not turn over in discovery, other than the State's request for reciprocal discovery in which it recited that it had "substantially complied with the discovery requests of the Defendant." Neither the

18

prosecutor nor defense counsel was called as a witness at the omnibus hearing to testify as to this critical point (or any other point). Instead, we have only the petitioner's bald assertions, and we have held that "[m]ere allegations standing alone without any proper proof or testimony cannot be considered as evidence[,]" *Pearson v. Pearson*, 200 W. Va. 139, 146, 488 S.E.2d 414, 421 (1997), and further that "'self-serving assertions without factual support in the record' have no force or effect." *Id*. (citing *Williams v. Precision Coil, Inc*., 194 W. Va. 52, 61 n.14, 459 S.E.2d 329, 338 n.14 (1995)). This is especially true where, as here, the petitioner would have no first-hand knowledge of what was turned over to his counsel.[18]

In support of its position, the State points to certain circumstantial evidence. First, Detective Wygal testified that he had reviewed material in the petitioner's divorce file, including "some video information in there"; when defense counsel objected to any testimony concerning "the content of the videos and Family Court," the prosecutor argued that these materials were provided in discovery – a statement defense counsel did not refute. Second, when the petitioner was cross-examined about S.A.'s allegations in the family court proceedings, defense counsel did not object, giving rise to an inference that

---

[18] Some of the petitioner's writings and other statements seem to indicate a belief on his part that he was entitled to receive a personal copy of any discovery from the State, which of course is not contemplated under our rules of procedure unless a defendant is proceeding pro se. In this case, there is no dispute that the petitioner was represented by counsel at all stages of the underlying case, notwithstanding his obvious dissatisfaction with every lawyer – nine in all, by the circuit court's count – who has ever been retained or appointed by the court.

those allegations were known to him. Third, the State quotes a statement petitioner made in a complaint to the Lawyer Disciplinary Board about his then-habeas counsel: "[C]ounsel is well aware that a week before the December 2013 Trial the State had provided me some of the Video Recordings from the Family Court file 05-D-43-4[,]" and "that the Braxton County Sheriff's Department had provided such videos that are also in the case file[.]" Fourth, defense trial counsel's time records show 5.8 hours of "Document Review – 2003 investigation docs from WV State Police," and "Document Review – Audio/Video Files." Finally, in his allocution at sentencing the petitioner alleged that his counsel had been in possession of the recordings but chose not to use them at trial:

> I would just like my children to know that I forgive them for what they have done because it is their mother Juanita [W.] and their stepfather Paul [W.] who are responsible for these fabrications they are repeating. Despite overwhelming evidence in writing documents and recordings in the possession of the State indicating these statements made by my children against me were no more than fabricated stories that the State has chose to ignore the facts. It was the responsibility of my defense attorney Mr. Blair to bring out in my trial these written and stated facts to the jury that would have provided more than reasonable doubt but his indications have made it appear he was more of an assistance to the prosecution than fulfilling his role as my defense counsel.

Although we appreciate the State's diligence in scouring this voluminous appendix record for evidence supporting its position, the circuit court did not make a factual finding as to whether the State had turned over the videos,[19] and we, as an appellate court,

_____

[19] The petitioner implies, both in his brief and in oral argument, that the State did not contest this issue below and should therefore be held to have waived its right to argue

do not act as a factfinding tribunal in the first instance. *See Bailey v. Norfolk & W. Ry. Co.*,206 W. Va. 654, 664, 527 S.E.2d 516, 526 (1999) ("it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented."); *Brown v. Gobble*, 196 W. Va. 559, 565, 474 S.E.2d 489, 495 (1996) ("our decisions have made plain that an appellate court is not the appropriate forum for a resolution of the persuasive quality of evidence."). Under different circumstances, this would require a remand, because

> "'[t]he mission of the appellate judiciary is neither to mull theoretical abstractions nor to practice clairvoyance.' *State v. Miller*, 194 W.Va. 3, 14, 459 S.E.2d 114, 125 (1995), *quoting Moore v. Murphy*, 47 F.3d 8, 10 (1st Cir. 1995). We previously have recognized that 'in most circumstances the failure to make specific findings of fact and conclusions of law regarding an issue raised in habeas proceedings . . . necessitate[s] a remand[.]' *State v. Warden, W. Va. Penitentiary*, 207 W.Va. 11, 19, 528 S.E.2d 207, 215 (1999)."

*Dennis v. State, Div. of Corr.*, 223 W. Va. 590, 593, 678 S.E.2d 470, 473 (2009). In the instant case, however, remand is unnecessary because the issue before us is not whose evidence carries the day on the question of whether the State turned over the videos; rather, the issue is whether the petitioner, who has the burden of proof in a proceeding seeking

---

it on appeal. We disagree. The State did not concede any of the petitioner's claims, and the contours of the omnibus hearing were set by the petitioner, who did not offer any evidence to substantiate his claim that the videos were not turned over in discovery and did not permit his counsel to offer any on his behalf. Therefore, the State had no obligation to offer evidence to rebut the claim.

21

habeas corpus relief,[20] has presented *any* evidence that the State withheld the videos. We conclude that he has not. Inasmuch as suppression of evidence is the sine qua non of a *Brady*/*Hatfield* claim, the petitioner's failure to prove that the videos were withheld is fatal to his allegation that the State violated its constitutional duty to turn over exculpatory evidence.

We take this opportunity to note that with respect to this issue, as well as numerous other issues discussed *infra*, we have found that the petitioner's claims fail for lack of evidentiary support. No witnesses were called to testify at the omnibus hearing, no affidavits were produced, and no documentary evidence was entered into the record.[21] Under the unique facts and circumstances presented here, this failure to prove the petitioner's claims is entirely attributable to the acts and omissions of the petitioner, not any acts or omissions of his habeas counsel. Any constraints on the omnibus hearing were the result of the petitioner's dogged insistence on doing things his way; the record is replete

---

[20] "A habeas corpus proceeding is civil in nature wherein the petitioner bears the burden of proof by a preponderance of the evidence. *See Sharon V.W. v. George B. W.*, 203 W.Va. 300, 303, 507 S.E.2d 401, 404 (1998)." *Justice v. Ballard*, No. 11-0321, 2011 WL 8199945, at *4 (W. Va. Nov. 15, 2011) (memorandum decision).

[21] Indeed, the video interviews at issue were not introduced into evidence at the omnibus hearing and were not contained in the court files of either the habeas case or the underlying case. On appellate review, this Court reviews the judgment of the circuit court to determine whether the court's factual findings and legal conclusions were supported by the evidence *before that court*. For that reason, "[a]nything not filed with the lower tribunal shall not be included in the record on appeal unless the Court grants a motion for leave to supplement the record on appeal for good cause shown." W. Va. R. Crim. P. 6)c). Thus, the issue of whether the videos were material under the *Youngblood* test would also fail for lack of evidentiary support.

with pleadings, letters, and statements in which the petitioner made it clear that he did not want to be represented by counsel (his ninth), would not speak to him, would not cooperate with him in any way, and would not authorize him to do or say anything on the petitioner's behalf. The result was that counsel was completely hamstrung in his ability to even argue, let alone prove, the issues set forth in the amended petition for writ of habeas corpus. Additionally, the petitioner was clearly informed, and was thus on notice, that although no other issues would be deemed to have been waived by virtue of their omission from the amended petition, it would be up to the petitioner to argue and prove them at the omnibus hearing. The upshot was that counsel was unable to do anything at the hearing, while the petitioner spent the majority of his time complaining about the State's waiver argument, notwithstanding the circuit court's attempts to assure him that he had already prevailed on the waiver issue.[22]

## Newly Discovered Evidence

In 2014, approximately one year after the petitioner's conviction on charges of sexually assaulting A.A., Juanita W.'s second husband, Paul W., stepfather to the petitioner's children, was arrested, indicted, and convicted for the sexual abuse of one of the stepchildren.[23] The petitioner claims that this is newly discovered evidence which, if

---

[22] The petitioner, having refused to take no as an answer with respect to his demand for copies of the J.A. and C.A. videos, now refuses to take yes for an answer with respect to waiver.

[23] Although the record is not clear, it appears that the victim was either C.A. or C.W.

presented to a jury, would lead the jury to "fairly infer that the stepfather, rather than

Petitioner, abused A.A[,]" since there was evidence at trial that Paul W. had lived with

Juanita W. and the children off and on during the relevant time period, 2003-2004. The

petitioner further claims that the evidence would have shown "a continuing motive for the

mother and stepfather to coach the children to lie and for A.A., even as an adult, to falsely

accuse petitioner." We agree with the circuit court that the petitioner's presentation fell far

short of the legal standard set by this Court:

> """A new trial will not be granted on the ground of
> newly-discovered evidence unless the case comes within the
> following rules: (1) The evidence must appear to have been
> discovered since the trial, and, from the affidavit of the new
> witness, what such evidence will be, or its absence
> satisfactorily explained. (2) It must appear from facts stated in
> his [or her] affidavit that [the defendant] was diligent in
> ascertaining and securing [the] evidence, and that the new
> evidence is such that due diligence would not have secured it
> before the verdict. (3) Such evidence must be new and material,
> and not merely cumulative; and cumulative evidence is
> additional evidence of the same kind to the same point. (4) The
> evidence must be such as ought to produce an opposite result
> at a second trial on the merits. (5) And the new trial will
> generally be refused when the sole object of the new evidence
> is to discredit or impeach a witness on the opposite side. Syl.
> pt. 1,*Halstead v. Horton,* 38 W.Va. 727, 18 S.E. 953 (1894)."
> Syllabus, *State v. Frazier,* 162 W.Va. 935, 253 S.E.2d 534
> (1979).' Syllabus point 3, *In re Renewed Investigation of State
> Police Crime Laboratory, Serology Division,* 219 W.Va. 408,
> 633          S.E.2d          762          (2006)."

Syl. Pt. 4, *State ex rel. Smith v. McBride*, 224 W. Va. 196, 681 S.E.2d 81 (2009).

We need not consider the first three prongs of the test, because the petitioner

has failed to establish the fourth, and most critical, prong: that the evidence in question

ought to produce an opposite result at a second trial on the merits. The evidence falls far short of the mark, in that the time frame of Paul W.'s abuse of a child is a decade removed from the time frame of the petitioner's abuse of A.A. Further, A.A. has never accused Paul W. of abusing her, and inasmuch as she was a young teenager in 2003 – 2004 and a young adult in 2013, there is no issue of misidentification which might have been the case if she were a small child. In this regard, although A.A. recanted her allegations against her father in 2004, the recantation was not based on misidentification of the perpetrator, but rather on A.A.'s reluctance to face him at trial. Additionally, although the petitioner states that the charges against Paul W. demonstrate that "another sexual offender was living in the house with his children," there is no evidence that Paul W. was living with the family at the time the petitioner committed his crimes against A.A. Indeed, the evidence at trial was to the contrary; it appears that Paul W. began living with Juanita W. and the children after the petitioner was jailed on the charges brought against him in August, 2003.

Finally, and fundamentally, an allegation of newly discovered evidence requires just that: evidence. At the omnibus hearing, the petitioner offered no witnesses, documents, or other evidence of any kind to support his claim – we have only his allegations, which are insufficient as a matter of law to support habeas corpus relief. *See Justice,* 2011 WL 8199945, at *21 ("Mere allegation without more is insufficient for relief in habeas corpus."); Syl. Pt. 1, in part, *State ex rel. Scott v. Boles*, 150 W. Va. 453, 453, 147 S.E.2d 486, 487 (1966) ("Under the statute of this state dealing with habeas corpus proceedings . . . [a] petitioner has the burden of proving by a preponderance of the evidence

25

the allegations contained in his petition or affidavit which would warrant his release.")

Although the circuit court could take judicial notice of the 2014 proceedings against Paul W., which involved only C.A. or C.W., that was insufficient as a matter of law for the court to take the quantum leap that (a) this evidence would be admissible at a retrial of the petitioner, which involved only A.A.;[24] and (b) even if it were, it would lead a jury to conclude it was Paul W., rather than the petitioner, who had sexually abused A.A. a decade earlier. With respect to admissibility, it is questionable at best, and highly unlikely under our precedents, whether a trial court would consider the evidence to be "a legitimate defense, rather than a defense of distraction." *State v. Varlas*, 237 W. Va. 399, 409, 787 S.E.2d 670, 680 (2016 (Benjamin, J., concurring in part and dissenting in part); *see generally State ex rel. Harvey v. Yoder*, 239 W. Va. 781, 806 S.E.2d 437 (2017) (discussing admission of evidence that underage sexual abuse victim had been victimized by another perpetrator). Under the facts and circumstances of this case, where A.A. has consistently named the petitioner as her abuser, and where her testimony was believed by the jury while the petitioner's was not, nothing more than rank speculation supports the petitioner's claim that admission of the evidence would be likely to produce an acquittal.

Perhaps sensing the weakness of his argument on this point, the petitioner argues that the evidence would simultaneously impeach A.A.'s testimony by

---

[24] Although the case initially involved S.A. and J.A. as well, the four counts of the indictment involving the former were dismissed and the jury acquitted the petitioner on the four counts involving the latter.

demonstrating her motive to lie –presumably to protect her stepfather and please her mother – and support the petitioner's testimony by bolstering his claim that Paul W. had a motive to coerce and coach A.A. to lie about the petitioner. As to the first portion of this argument, we reiterate that a "new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." *Smith*, 224 W. Va. at 197, 681 S.E.2d at 82-83, Syl. Pt. 4, in part (citation omitted). As to the second portion of the argument, we find that it fails for two reasons. First, it fails for lack of evidentiary support; as set forth *supra*, the petitioner failed to produce the videos which are the basis for his claim that his children were coached. Second, it fails for lack of relevance; the petitioner admits that even if the videos had been produced, they show J.A. and C.A. claiming to have been coached, not A.A.

## **Speedy Trial**

The petitioner claims that he was denied his constitutional right to a speedy trial, as guaranteed by Amendment VI of the United States Constitution and article III, section 14 of the West Virginia Constitution. It is well established that in West Virginia, "'[i]t is the three-term rule, W. Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution.' Syllabus point 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986)." Syl. Pt. 2, *State ex rel. Porter v. Farrell*, 245 W. Va. 272, 858 S.E.2d 897 (2021).

27

The factual basis for the petitioner's speedy trial claim is his allegation that the offenses charged in the 2004 indictment were the same offenses charged in the 2013 indictment, notwithstanding the different time frames set forth in the indictments. Building upon this factual premise, the petitioner then implicitly argues that once an indictment is dismissed without prejudice, any subsequent indictment on the same or similar charges must be filed, and trial must be held, within three terms after the filing of the original indictment. In making this argument, the petitioner points to no authority to support such an extension of the speedy trial doctrine, and our research has disclosed none.

In regard to any speedy trial claim, we note that in Harrison County, the terms of court begin on the first Monday of January, May, and September. *See* Rule 2.15 of the West Virginia Trial Court Rules. In the 2004 proceeding, the petitioner was indicted on February 1, 2004, and the indictment was dismissed without prejudice on April 28, 2004, all within one term of court. The term in which an individual was indicted is not even included in the three-term calculus. S*ee State ex rel. Porter v. Farrell*, 245 W. Va. 272, __, 858 S.E.2d 897, 901 (2021). Therefore, no speedy trial issue ever arose in the petitioner's 2004 case, and his attempt to recast a claim of pre-indictment delay, *see infra*, as a speedy trial claim, fails.

**<u>Access to Counsel</u>**

The petitioner claims that the trial court "forced Petitioner to trial with a lawyer whom he did not trust and could not work with[,] under what is deemed an "explicit

28

threat" that if trial counsel were discharged, the petitioner would have to represent himself. This assignment of error requires little discussion. As the circuit court noted in its comprehensive opinion, the petitioner had multiple attorneys at the trial court level and at least five attorneys at the habeas level, all of whom were discharged and replaced at the petitioner's insistence that he could not trust or work with *any* of them. Further, the petitioner's trial counsel, characterized by the court as "a seasoned lawyer with criminal law experience," had been appointed to replace yet another lawyer with whom the petitioner was dissatisfied; he was neither the first nor the last in a long line of attorneys appointed by the court in a futile attempt to placate the petitioner, no matter how unreasonable his demands. Finally, our review of the trial transcript satisfies us that counsel presented the best defense possible in a difficult case, with a difficult client, securing dismissal of four counts of the indictment at the close of the State's evidence and not guilty verdicts on four other counts. Nothing in the record leads this Court to even question "whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue',][25] as counsel's performance so clearly meets the established standard set forth in *Miller*[26] and its progeny.

---

[25] Syl. Pt. 6, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

[26] *Id*. at 6, 459 S.E.2d at 117 (adopting standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).

**Knowing Use of Perjured Testimony**

The petitioner claims that A.A. and the investigating officers all committed perjury at trial, as evidenced by "a troubling number of material inconsistencies between police reports, sworn testimony, and objectively ascertainable reality." The petitioner presents no specific instances of alleged perjury, alluding vaguely to "inconsistencies . . . too numerous and stark to be unintentional." In contrast, during the course of the underlying habeas proceedings the petitioner submitted hundreds of pages of allegations – a dense hodgepodge which, in toto, boils down to credibility issues which were resolved against the petitioner by the jury.[27]  The jury heard evidence that A.A. had previously recanted sexual abuse allegations, leading to the dismissal of prior charges against the petitioner, but nonetheless credited her testimony.  In this regard, we have held that "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syl. pt. 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)."  Syl. Pt. 1, *State v. Haid*, 228 W. Va. 510, 721 S.E.2d 529 (2011).

This Court has held that

> [i]n order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony

---

[27] It will be recalled that the jury acquitted the petitioner on all four counts involving his son J.A., which indicates that the jury carefully considered the evidence and did not simply "pick a side."

30

was false, and (3) the false testimony had a material effect on the jury verdict.

Syl. Pt. 2, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).  Here, where the petitioner has failed to demonstrate that any witness gave false testimony, let alone that the prosecutor presented such testimony knowing it to be false, the petitioner's claim fails.

### Falsified Transcripts

The petitioner contends that at both the preliminary hearing and the trial, the court reporter omitted and/or materially altered testimony from the transcripts of those proceedings.  In his pro se petition and in some of his lengthy letters and pro se pleadings filed with the court, he claimed that he and his brother remember testimony that differs from that which appears in the transcripts.

In its final order in this habeas case, the circuit court held that the petitioner had not provided any evidence to support this claim.  We agree.  The petitioner's claim that he remembers certain testimony differently from that which was transcribed is insufficient as a matter of law to establish that the court reporter falsified any transcripts.  The petitioner did not produce any tapes of the testimony in question for comparison with the transcripts prepared by the court reporter. Further, the petitioner called neither the witnesses whose testimony was alleged to have been altered nor the court reporter to give evidence on this

31

point; indeed, he did not even call his brother. We conclude that this allegation is without merit.

## Ineffective Assistance of Counsel

It is well established in this Court's jurisprudence that "[c]laims of ineffective assistance of counsel are governed by the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and subsequently adopted by this Court in *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995)." *State ex rel. Vernatter v. Warden*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999). In its most basic formulation, that test asks whether "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. (citing *Miller*, 104 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5, in part). This is a rigorous test, and "[f]ailure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 321, 465 S.E.2d 416, 423 (1995); *see also Meadows v. Mutter*, 243 W. Va. 211, 220, 842 S.E.2d 764, 773 (2020). Further,

> "the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another. This result is no accident, but instead flows from deliberate policy decisions this Court and the United States Supreme Court have made mandating that '[j]udicial scrutiny of counsel's performance must be highly deferential' and prohibiting '[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance[.]' *Strickland,* 466 U.S. at 689-90, 104 S.Ct. at 2065-66, 80 L.Ed.2d at 694-95. In

32

other words, *we always should presume strongly that counsel's performance was reasonable and adequate.* A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' [*Miller*], 194 W.Va. at 16, 459 S.E.2d at 127 (emphasis added)."

*Tex S. v. Pszczolkowski*, 236 W. Va. 245, 255-56, 778 S.E.2d 694, 704-05 (2015). With these principles and guidelines in mind, we turn to the petitioner's allegations.

In his brief, the petitioner claims that "[trial] counsel made numerous strategic errors, failed to call needed witnesses, did not conduct a reasonable investigation, failed to adequately cross examine state's witnesses, provided ineffective assistance regarding plea bargaining, and generally made choices contrary to Petitioner's wishes." He provides no further specifics from which this Court could ascertain exactly what acts or omissions are alleged to have been such that "no reasonably qualified defense attorney would have so acted in the defense of an accused." *State v. Meadows*, 231 W. Va. 10, 24, 743 S.E.2d 318, 332 (2013) (citing Syl. Pt. 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974)). Further, and significantly, at the omnibus hearing the petitioner offered no evidence whatsoever on this (or any other) issue, relying wholly on his oral argument[28] which could most kindly be described as discursive and in fact was largely

---

[28] Although the petitioner was sworn at the outset of the omnibus hearing, his lengthy statement was not subject to cross-examination and thus did not constitute evidence sufficient to carry the petitioner's burden of proof.

incomprehensible.[29] Thus, the circuit court was left to determine whether ineffective assistance of counsel was apparent on the face of the trial transcript, without the benefit of testimony from "'the most significant witness, the trial attorney,' in order to give that individual 'the opportunity to explain the motive and reason behind his or her trial behavior.'" *Tex S.*, 236 W. Va. at 253-54, 778 S.E.2d at 702-03 (citing *Miller,* 194 W.Va. at 15, 459 S.E.2d at 126);[30] *see also Painter v. Ballard*, No. 15-0540, 2016 WL 3349168, at *3 (W. Va. June 15, 2016) (memorandum decision) (explaining "that an attorney's strategy is rarely obvious from the trial or appellate record[,]" and that in the absence of

---

[29] Although the petitioner does not clearly articulate this point in his brief, it is obvious that both at the omnibus hearing and now on appeal, his position is that ineffective assistance of trial counsel is apparent on the face of the record in the underlying case. *See* W. Va. Code § 53-4A-3(a), which provides in part that "the petition, affidavits, exhibits, records and other documentary evidence attached thereto, *or the record in the proceedings which resulted in the conviction and sentence*," may be considered by the circuit court in determining whether a petitioner is entitled to relief in habeas corpus. (Emphasis added). As noted *supra*, the record in the underlying case contained hundreds of pages of written submissions from the petitioner, acting pro se, which the petitioner obviously believes to have evidentiary value. We have examined these submissions, as well as the hundreds of pages of additional written submissions contained in the habeas record, all of which were made a part of the voluminous appendix record. We took this action notwithstanding our continued admonition to the bar that "'[j]udges are not like pigs, hunting for truffles buried in briefs [,]' *State Department of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), and the same observation may be made with respect to appendix records." *Multiplex, Inc. v. Town of Clay*, 231 W. Va. 728, 731 n.1, 749 S.E.2d 621, 624 n.1 (2013). As set forth in the text *supra*, these submissions are largely incomprehensible and, although there are vague references to witnesses who could testify to some of the allegations, none of these witnesses ever gave evidence at trial or in the habeas proceedings. Nothing contained in the submissions provides evidentiary support for any of the petitioner's claims.

[30] We explained in *Tex S.* that "[i]t is the need for the trial attorney's testimony that generally precludes this Court from reviewing any ineffective assistance of counsel claim on direct appeal." 236 W. Va. at 254, 778 S.E.2d at 703.

34

the attorney's testimony, "conclusions drawn regarding strategy are nothing more than mere speculation.").

Following a comprehensive analysis of the petitioner's claims, the circuit court concluded that

> [t]he Petitioner has not shown that any of the above listed deficiencies were not his counsel's reasonable decisions as the best way to represent his client. From the record of the case it appears that his trial counsel's strategy was very reasonable considering that his client was facing twelve (12) felony charges and trial counsel was able to get four (4) dismissed after the presentment of the State's case and the jury returned a not guilty verdict on four (4) of the remaining charges.

We agree with the court's analysis and with its conclusions. For example, many of the petitioner's complaints stem from his apparent belief that counsel should have more aggressively cross examined A.A. However, although there was quite a bit of impeachment evidence available on which to challenge A.A.'s credibility – much of which evidence was made known to the jury during the cross-examination of A.A., the direct examination of the petitioner, and counsel's opening statement and closing argument – counsel could reasonably have chosen to refrain from "hammering" a young woman who was reliving a trauma, describing in ugly detail the sexual abuse she endured at the hands of her father while she was a young teenager. Additionally, the petitioner complains that counsel did not secure an expert witness to counter the State's expert, who testified that S.A. and J.A. fit the profile of sexual assault victims. Significantly, the expert did not offer any opinions with respect to A.A. We concur with the circuit court that the expert's testimony was of

35

no moment, and that rebutting her testimony would not have made any difference in the outcome, since the charges involving S.A. were dismissed and the petitioner was acquitted of the charges involving J.A. Finally, as discussed *infra*, the petitioner contends that counsel was ineffective in failing to file a motion to suppress evidence offered by the State pursuant to Rule 404(b) of the West Virginia Rules of Evidence. We note at the outset that the evidence of which the petitioner complains – primarily J.R.'s testimony that he was sexually assaulted on a daily basis – was blurted out by the witness, not elicited by the State. The circuit court gave the jury several cautionary instructions, and the jury ultimately acquitted the petitioner on all counts involving J.R. In short, the petitioner has utterly failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Vernatter*, 207 W. Va. at 17, 528 S.E.2d at 213 (citation omitted).

In the absence of any evidence, and most particularly in the absence of testimony from trial counsel explaining what he did and didn't do, and why,[31] we agree

---

[31] As best we can ascertain from the petitioner's written submissions and oral argument, aside from the matters discussed in the text *supra*, he complains that his lawyer didn't file a motion for bill of particulars; didn't subpoena DHHR or CPS records concerning alleged child abuse in Juanita W.'s home; didn't investigate whether Juanita W.'s boyfriend – later her husband – was abusing the children; didn't introduce evidence as to A.A.'s mental deficiencies (which were apparently learning disabilities); and didn't hire an expert to evaluate whether the petitioner fit the profile of a sexual offender. In the absence of testimony from trial counsel, we have no way to determine whether such evidence even existed, and if so, why counsel chose not to use it. Any resolution of these questions would amount to "mere speculation." *Painter*, 2016 WL 3349168, at *3.

with the circuit court that the petitioner has failed to sustain his burden of establishing either prong of the *Strickland/Miller* test. *See Miller*, 104 W. Va. at 6, 549 S.E.2d at 117, Syl. Pt.5, in part.

## Right to an Indictment

The petitioner claims that the State violated his right to an indictment, specifically, by producing a charging instrument "too broad to provide adequate notice." We first note that the petitioner did not raise this challenge prior to trial, as required by Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure.[32] Nonetheless, the circuit court considered this issue on the merits, and we will do so as well.

The petitioner first alleges that the time span in which the offenses in the indictment are alleged to have occurred, January __, 2003 to December __, 2004, was "so broad that he was deprived of notice and unable to adequately prepare for trial." The petitioner cites no authority for this sweeping statement, and indeed his argument runs contrary to this Court's oft-repeated pronouncement that

> """[a]n indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R. Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in

---

[32] Rule 12(b)(2) provides, in relevant part, that motions which must be raised prior to trial include "defenses and objections based on defects in the indictment or information[.]"

jeopardy." Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999).' Syl. Pt. 5, *State v. Haines*, 221 W.Va. 235, 654 S.E.2d 359 (2007)."

Syl. Pt. 4, *Ballard v. Dilworth*, 230 W. Va. 449, 739 S.E.2d 643, 644 (2013); *see also State v. Haines*, 221 W. Va. 235, 240, 654 S.E.2d 359, 364 (2007); *State v. Wallace*, 205 W. Va. 155, 160-61, 517 S.E.2d 20, 25-26 (1999).

We have also made it clear that time is not an element of sexually based offenses, and therefore need not be specified in the indictment or proved at trial. *See, e.g.*, *State v. Larry A.H.*, 230 W. Va. 709, 713, 742 S.E.2d 125, 129 (2013) (citing *Miller,* 195 W.Va. at 663, 466 S.E.2d at 514) ("Because time is not an element of the crime of sexual assault, the alleged variances concerning when the assaults occurred [do] not alter the substance of the charges against the defendant."). Additionally, and of critical importance to the resolution of the instant case,

> [the petitioner's] defense was simply that he did not commit the crimes. This defense could have been presented regardless of what dates were alleged in the indictment. *See Jackson v. Commonwealth*, No. 2011-SC-000008-MR, 2012 WL 3637159, at *3 (Ky. Aug. 23, 2012) ("[W]hen a defendant testifies that sexual abuse never occurred, no prejudice accrues to the defendant when an indictment is amended to change the time of the offense without charging additional offenses[.]"); *State v. Riffe*, 191 N.C.App. 86, 661 S.E.2d 899, 905 (2008) ("In cases in which time is not an essential element of the crime and an alibi defense has not been presented, it has been held that an amendment as to the date of the offense is not material.").

*Larry A.H.*, 230 W. Va. at 713, 742 S.E.2d at 129. The only substantiated alibi defense offered by the petitioner was that he was in jail from August 10 – November 3, 2003, a

38

time period in which none of the offenses against A.A. were alleged to have occurred.[33] As to any other time period, the petitioner's defense was – and remained, throughout the trial, the appeal, and these habeas proceedings – that A.A. was a liar, that she was lying at the behest of her mother and stepfather, and that he had never sexually assaulted or molested her anywhere, in any way, at any time.

The petitioner also alleges a fatal variance between the *allegata* and the *probata* in Counts 10 and 12, where a typographical error lists the victim's name as "S.A." rather than "A.A." in each. We have held that "[v]ariances (between indictment and proof) are regarded as material in criminal cases only when they mislead the defendant in making his defense, and may expose him to the danger of being again put in jeopardy for the same offense." Syl. Pt. 2, in part, *State v. Nelson*, 121 W. Va. 310, 3 S.E.2d 530, 530 (1939). Here, we agree with the court below that the petitioner could not possibly have been misled, as the counts in question listed the victim as "an unemancipated child whose date of birth [is] 5/18/88," clearly a reference to A.A. Further, Count 10 specifies that the criminal conduct was "touch[ing] the vagina of A.A. without her consent[,]" while the petitioner "was not married to A.A.[,]" and at a time "while said A.A. was in his care, custody and control and while [petitioner] was responsible for the general supervision of A.A.'s welfare[.]" Count 12 contains the exact same specific facts. In short, a review of the counts in question reveals that the petitioner's claim to have been misled is frivolous.

---

[33] *See* text *infra*.

## Pre-Indictment Delay

The petitioner claims that he was prejudiced by the lapse of time between dismissal of the 2004 indictment and the handing up of the 2013 indictment, which, he claims, alleged the same offenses. Neither the facts nor the law supports the petitioner's argument.

The 2004 indictment contains six counts involving A.A.: four counts of sexual abuse in the first degree, West Virginia Code § 61-8B-7, and two counts of sexual abuse by a parent, guardian or custodian, West Virginia Code § 61-8D-5. All of the offenses were alleged to have occurred between February 1, 2002 and March 31, 2002. Counts 1, 2, and 5 were alleged to have taken place "in the home of Frank [A.]," designated only as having been located in Harrison County, West Virginia, while Counts 3, 4, and 6 were alleged to have taken place "in an abandoned house in Harrison County[.]" The three counts alleged to have occurred in the petitioner's home involved the alleged touching of A.A.'s vagina (Count 1), breasts (Count 2), and both vagina and breasts (Count 5). In contrast, the 2013 indictment contains four counts involving A.A.: two counts of sexual abuse in the first degree, and two counts of sexual abuse by a parent, guardian or custodian. All of the offenses were alleged to have occurred between January __, 2003 and December __, 2004, and all were alleged to have occurred in Harrison County, without any further designation of location. Three counts involved the alleged touching of A.A.'s vagina (Counts 9, 10 & 12), and one involved the alleged touching of her breasts (Count 11).

Viewing these indictments, we can see that the *behavior* alleged in Counts 1 and 2 of the 2004 indictment, touching of A.A.'s vagina and breasts, respectively, is the same as that alleged in Counts 9 and 11 of the 2013 indictment. However, any similarity ends there, and it would be rank speculation for this Court to attempt to determine whether the *specific offenses* charged are the same – especially where, as here, the State's theory of the case in 2013 was that the behavior was recurring throughout a two-year period. Inasmuch as no trial was ever held on the 2004 indictment, we have no way of knowing whether the offenses charged therein were the same ones charged in the 2013 indictment, albeit with a different time frame in which the offenses were alleged to have been committed.

Additionally, this Court has held that

[t]o demonstrate that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, a defendant must introduce substantial evidence of actual prejudice which proves he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was or will be likely affected.

Syl. Pt. 4, *State ex rel. Knotts v. Facemire*, 223 W. Va. 594, 678 S.E.2d 847 (2009). In this regard, "[d]imming memories and the passage of time alone are insufficient to establish the level of prejudice necessary to show the denial of due process." *Id*. at 603, 678 S.E.2d at 856 (citing *U.S. v. Marion,* 404 U.S. 307, 326 (1971) and *U.S. v. McDougal,* 133 F.3d 1110, 1113 (8th Cir.1998)). Rather, "actual prejudice 'is commonly demonstrated by the

41

loss of documentary evidence or the unavailability of a key witness],]'"[34] which losses

must be set forth with specificity, including the names of the unavailable witnesses and the

substance of the witnesses' anticipated testimony. *Knotts*, 223 W. Va. at 603, 678 S.E.2d

at 856 (citing *Jones v. Angelone*, 94 F.3d 900, 908 (4th Cir. 1996)).

In the instant case, the petitioner puts forth nothing but conclusory allegations

of prejudice. He does not cite any documentary evidence favorable to his defense that is

no longer available, and he does not specify any material witnesses who would have been

available to testify in 2004 but were no longer available in 2013. Rather, the petitioner

would have this Court presume prejudice from the mere passage of time – an analytical

approach dating back to several of our earlier cases,[35] all of which were expressly overruled

in *Knotts*:

> After a thorough reconsideration of this issue, we are
> convinced that our ruling in *Hey,* preindictment delay which
> permits the use of presumptive prejudice to establish a due
> process violation based on, is contrary to the clear weight of
> authority throughout this country. Courts are uniformly in
> agreement that actual prejudice must be proven to advance a
> due process claim for preindictment delay. *See Jones,* 94 F.3d
> at 906–907. Accordingly, we hold that in order to maintain that
> preindictment delay violates the Due Process Clause of the
> Fifth Amendment to the U.S. Constitution and Article III,
> Section 10 of the West Virginia Constitution, the defendant
> must show actual prejudice. To the extent our prior decisions

---

[34] *Knotts*, 223 W. Va. at 603, 678 S.E.2d at 856 (citing *U.S. v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999)).

[35] *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (1980); *Handley v. Ashworth*, 181 W. Va. 379, 382 S.E.2d 573 (1989).

in *Hey, Hundley*, and their progeny must are inconsistent with this holding, they are expressly overruled.

*Knotts*, 223 W. Va. at 601, 678 S.E.2d at 854. Accordingly, we conclude that the petitioner's claim of pre-indictment delay is without merit.

## Prosecutorial Misconduct

The petitioner claims that J.A.'s testimony concerning alleged daily abuse was improperly admitted pursuant to Rule 404(b) of the West Virginia Rules of Criminal Procedure,[36] and that the prosecutor's mention of this testimony in closing argument constituted prosecutorial misconduct. We need not do an extended analysis of this issue, as it is well established in our law that alleged error in the admission of evidence at trial is not cognizable on collateral review; "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 3, in part, *Hatcher v. McBride*, 221 W. Va. 5, 650 S.E.2d 104 (2006); *see also Johnson v. Mutter*, No. 19-0788, 2020 WL 6624970 (W. Va. Nov. 4, 2020), at *3 ("[a]bsent 'circumstances impugning fundamental fairness or infringing specific constitutional protections,' admissibility of evidence does not present a state or federal constitutional question.") (citing *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960)).

---

[36] It will be recalled that the indictment alleged four discrete acts involving J.A., not a pattern of daily abuse spanning years.

Additionally, there was no objection made either to the testimony or to the prosecutor's reference thereto in her closing argument, and neither the petitioner nor his counsel sought direct or collateral review pursuant to the plain error doctrine. As we have frequently noted,

> ""[t]he plain error doctrine of W. Va. R. Crim. P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result." Syllabus Point 2, *State v. Hatala*, 176 W.Va. 435, 345 S.E.2d 310 (1986).' Syl. Pt. 4, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987)."

Syl. Pt. 3, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016). In the instant case, where there is no indication whatsoever of a miscarriage of justice resulting from the testimony in question, *see* text *infra*, this Court discerns no basis on which to conclude that the case falls within the narrow exception to our rules requiring contemporaneous objection.

Finally, it is clear from the record that the testimony in question, even if admitted in error, was harmless beyond a reasonable doubt, given the fact that the jury acquitted the petitioner of all four counts involving J.A. In short, an examination of the record shows no indication whatsoever that the "testimony could have influenced the jury's verdict[,]" *State v. Blevins*, 231 W. Va. 135, 157, 744 S.E.2d 245, 267 (2013), in any way adverse to the petitioner.

**Sufficiency of the Evidence**

The petitioner asserts that the evidence at trial was insufficient to sustain a verdict of guilty on the four counts of the indictment alleging sexual abuse of the petitioner's daughter, A.A. We have held that

> "'[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.' Syllabus point 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995)."

Syl. Pt. 7, *State v. White*, 228 W. Va. 530, 534, 722 S.E.2d 566, 570 (2011). Further, in a long line of cases decided over the course of four decades, we have made clear that in this jurisdiction, "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syllabus point 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981)." Syl. Pt. 3, *State v. Benny W.*, 242 W. Va. 618, 837 S.E.2d 679 (2019). In this regard, "[o]nly when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law." *Id*. at 620, 837 S.E.3d at 681, Syl. Pt. 4, in part.

With these precepts in mind, we examine the testimony of A.A., upon whose testimony the petitioner's convictions rested. A.A. told the jury that when she was thirteen years old, and the family was living in a trailer in Enterprise, West Virginia, the petitioner would come into her room, pull her into a hallway or laundry room, and fondle her "crotch" and her "boobs" under her clothing. According to A.A. this happened "all the time" until she was fifteen, at which time an incident occurred that finally caused her to disclose the abuse: she was sitting on a kitchen counter in the trailer, and the petitioner accosted her in front of her brother, S.A., and two friends, J.G. and S.G. At that point A.A. left the trailer and went to the home of her mother's friend, where she informed both Juanita W. and the friend what had been happening to her. Juanita W. immediately took A.A. to the police, where she was interviewed. According to the record, this incident, and A.A.'s disclosure to the authorities, occurred on August 3, 2003.

Without question, the jury found this testimony sufficient to establish the petitioner's guilt beyond a reasonable doubt. At trial, the petitioner rested his claim of unbelievability not only on A.A.'s 2004 recantation but also on a collateral issue: A.A.'s testimony that when she ran away from home in 2004, at a time when Juanita W. and the children were living with Juanita's boyfriend, Paul W., she walked from Fairmont to Clarksburg, where her grandmother lived. Although a twenty-one-mile hike is indeed a trek, it by no means "defies physical laws" that a fifteen-year-old girl could cover that distance in eight or nine hours, depending on her pace.

46

We conclude that A.A.'s testimony at trial was sufficient to establish the petitioner's guilt beyond a reasonable doubt. We decline the petitioner's request that we substitute our own credibility determinations for the jury's, and further decline his request that we re-weigh the evidence which was carefully considered by the jury. The petitioner's sufficiency claim is without merit.

## Right to be Present at All Critical Stages

The petitioner alleges that he was denied his constitutional right to be present at all critical stages of his case, a claim based upon certain language contained in an Agreed Order entered on November 22, 2013, which stated:

> On this 21st day of November, 2013, came the defendant Frank [A.], not in person but by his counsel, Jerry Blair, and the State of West Virginia by Laura Pickens, Assistant Prosecuting Attorney for Harrison County, West Virginia all pursuant to the defendant's "*Motion to Disclose Transcript of Matters Occurring Before the Grand Jury*."

In this regard, the petitioner cites to *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977), wherein we held that "[t]he defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." *Id*. at 235, 233 S.E.2d at 713, Syl. Pt. 6. The petitioner's claim fails for three reasons.

First, the petitioner has failed to prove that there was actually a hearing on November 21, 2013; the language of the order is susceptible of differing – and equally reasonable – interpretations, one being that on the date in question, the prosecutor and defense counsel simply tendered their agreed order to the trial judge. There is no transcript of a hearing in the appendix record, and the petitioner, who had the burden of proof on this issue, offered no evidence at the omnibus hearing to support his claim that a hearing actually took place. Second, this Court has clarified that "[t]he right to be present is not a right to be present at every moment, but a right to be present at all 'critical stages' in a criminal proceeding." *State v. Brown*, 210 W. Va. 14, 22, 552 S.E.2d 390, 398 (2001) (citing *State v. Shabazz,* 206 W.Va. 555, 557, 526 S.E.2d 521, 523 (1999), *cert. denied,* 529 U.S. 111 (2000)). In this regard, "'[a] critical stage of a criminal proceeding is where the defendant's right to a fair trial will be affected.' Syllabus Point 2, *State v. Tiller,* 168 W.Va. 522, 285 S.E.2d 371 (1981)." *Brown*, 210 W. Va. at 17, 552 S.E.2d at 393, Syl. Pt. 5. Although we take this opportunity to caution counsel that the better practice is to ensure the presence of a criminal defendant at every proceeding in his or her case,[37] under the facts and circumstances of this case, we cannot say that the petitioner's absence from a routine discovery hearing, assuming, arguendo, that one was held, in any way affected his

---

[37] *See*, *e.g.*, *State ex rel. Myers v. Painter*, 213 W. Va. 32, 576 S.E.2d 277 (2002) (per curiam) (continuance motion is a critical stage in a criminal case, as is a discussion between counsel and the trial judge concerning a juror communication); *State v. Hicks*, 198 W. Va. 656, 482 S.E.2d 641 (1996) (per curiam) (clerk's communication with a juror is a critical stage in a criminal case); *State v. Barker*, 176 W. Va. 553, 346 S.E.2d 344 (1986) (per curiam) (judge's communication with a juror is a critical stage in a criminal case).

right to a fair trial. Third, and again assuming that there was in fact a hearing on the petitioner's motion for disclosure of grand jury materials, the circuit court *granted* the motion, which eliminates any possible claim that the defense was prejudiced by the petitioner's absence from the hearing.

## **Illegal Arrest/Violation of Fourth Amendment Rights**

The petitioner claims that at the time he was arrested in 2013, the police knew A.A.'s statements were unreliable because they were aware of her recantation of charges in 2004. Therefore, the petitioner reasons, his arrest with without probable cause and therefore unreasonable under the Fourth Amendment. *See* U. S. Const. amend IV.

This issue requires little discussion. First, A.A.'s prior recantation is a factor that may be taken into account in weighing her credibility; however, it is not a factor which requires investigating officers to deem her allegations to be false. In this case, a jury ultimately determined that A.A.'s allegations were credible and that the allegations had been proved beyond a reasonable doubt. Second, our research discloses no case in this or any other jurisdiction standing for the proposition that an arrest is unreasonable because it is based on allegations made by an individual who has previously recanted similar allegations. In this regard, we note with disapproval the petitioner's reliance on *Payton v. New York*, 445 U.S. 573 (1980), which he cites for the proposition that "[a]rrests without probable cause are unreasonable." *Payton* has nothing whatsoever to do with arrests made without probable cause. Rather, *Payton* involved the legality of a warrantless entry into an

individual's home for the purpose of arresting him, holding that a warrantless entry is

unlawful, "at least in the absence of exigent circumstances, even when it is accomplished

under statutory authority and when probable cause is clearly present." *Id*. at 588-89.


## **Cumulative Error**

In what can fairly be determined a grab-bag assignment of error, the

petitioner claims that the thirteen assignments of error discussed *supra*, as well as the other

"unwaived *Losh* grounds,"[38] constitute cumulative error.  In that regard, we have held that

> "'[w]here the record of a criminal trial shows that
> the cumulative effect of numerous errors committed during the
> trial prevented the defendant from receiving a fair trial, his
> conviction should be set aside, even though any one of

---

[38] The petitioner lists the following grounds in addition to those argued in his brief: trial court lacked jurisdiction; statute under which conviction obtained unconstitutional; indictment shows on face no offense committed; prejudicial pre-trial publicity; involuntary guilty plea; mental competency at time of crime; mental competency at time of trial cognizable even if not asserted at proper time or if resolution not adequate; incapacity to stand trial due to drug use; language barrier to understanding the proceedings; unintelligent waiver of counsel; failure of counsel to take an appeal; consecutive sentences for same transaction; coerced confessions; unfulfilled plea bargain; information in pre-sentence report erroneous; double jeopardy; irregularities in arrest; excessiveness or denial of bail; no preliminary hearing; illegal detention prior to arraignment; irregularities or errors in arraignment; challenges to the composition of grand jury or its procedures; failure to provide a copy of indictment to defendant; defects in indictment; improper venue; refusal of continuance; refusal to subpoena witnesses; prejudicial joinder of defendants; lack of full public hearing; non-disclosure of grand jury minutes; refusal to turn over witness notes after witness testified; claim of incompetence at time of offense as opposed to time of trial; claims concerning use of informers to convict; constitutional errors in evidentiary rulings; instructions to the jury; claims of prejudicial statements by trial judge; claims of prejudicial communications between prosecutor or witnesses and jury; question of actual guilt upon an acceptable (sic) guilty plea; severer sentence than expected; excessive sentence; mistaken advice of counsel as to parole or probation eligibility; and amount of time served on sentence, credit for time served.

such errors standing alone would be harmless error.' Syllabus point 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972)."

Syl. Pt. 7, *State v. Tyler G.*, 236 W. Va. 152, 778 S.E.2d 601, 604 (2015). We have cautioned, however, that mere allegations of error cannot form the basis for application of the cumulative error doctrine. *See State v. Knuckles*, 196 W.Va. 416, 426, 473 S.E.2d 131, 141 (1996) (per curiam) ("because we find that there is no error in this case, the cumulative error doctrine has no application. Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); *see also State v. Trail*, 236 W. Va. 167, 188 n.31, 778 S.E.2d 616, 637 n.31 (2015) ("Ms. Trail's final assignment alleges cumulative error. Because we have found no errors, this assignment need not be addressed.") (citing *Knuckles*, 196 W. Va. at 416, 473 S.E.2d 141); *State v. McKinley*, 234 W. Va. 143, 167 n.22, 764 S.E.2d 303, 327 n.22 (2014) ("In order to invoke the cumulative error doctrine, there must be more than one harmless error. Mr. McKinley cannot rely on this doctrine because only one harmless error was found in this case.").

The alleged errors in this case fall into three separate categories. First: The thirteen assignments of error discussed *supra* have all been rejected by this Court; in short, we have found no error. Therefore, pursuant to *Knuckles*, the doctrine of cumulative error does not apply.

51

Second: As set forth *supra*, in order to resolve the impasse resulting from the petitioner's refusal to cooperate with his attorney, the circuit court held that no *Losh* grounds would be deemed waived by virtue of counsel's failure to include them in the Amended Petition.[39] The court made it clear, however, that any grounds the petitioner wished to be considered would have to be addressed by him at the omnibus hearing, supported by whatever evidence and/or argument he deemed necessary to support his contentions. As the circuit court found in its order, at the hearing the petitioner did not even address the vast majority of the *Losh* grounds, let alone support them with witness testimony or other evidence. Thus, it is irrelevant that the "other grounds" enumerated in the *Losh* laundry list but not addressed in the petitioner's appellate brief, *see supra* note 38, were not deemed waived by the circuit court; they were clearly abandoned by the petitioner at the omnibus hearing and are thus deemed to be fully and finally adjudicated against him. *See Jordan v. Ballard*, No. 12-1015, 2013 WL 5476421, at *7 (W. Va. Oct. 1, 2013) ("This Court accordingly FINDS that all the grounds for relief that have been listed in the various documents filed on behalf of the Petitioner and for which no evidence was presented, or have not been mentioned or argued in the *Petitioner's Brief in Support of Amended Petition for a Writ of Habeas Corpus ad Subjiciendum,* were not fully and properly raised or argued

---

[39] Ordinarily, any grounds not raised in a petition for writ of habeas corpus – or here, an amended petition – are waived. *See Lewis v. Ames*, 242 W. Va. 405, 410, 836 S.E.2d 56, 61 (2019) ("our law clearly supports the proposition that any grounds not raised in the petition for habeas corpus are deemed waived.").

52

by the Petitioner and are therefore waived and will be treated as being abandoned."). Therefore, the circuit court properly denied relief on all of those grounds, and they are not cognizable on appeal, having been forfeited. In *See State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996), we explained that

> "'even where a right has not been waived, any entitlement to have error in its denial or abridgement corrected on appellate review may be forfeited by the "failure to make timely assertion of [the] right" at trial. Such a forfeiture does not, as does waiver, extinguish the error, but it does impose stringent limitations, embodied in Rule 52(b), on the power of appellate courts to correct the error.'"

*Id.* at 630-31, 482 S.E.2d at 615-16 (citations omitted); s*ee also State v. Lambert*, 236 W. Va. 80, 99, 777 S.E.2d 649, 668 (2015) ("To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. The forfeiture rule ... fosters worthwhile systemic ends and courts will be the losers if we permit the rule to be easily evaded. It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely."). Further, the doctrine of res judicata bars future litigation of these issues. *See Gerald K.M. v. Ballard*, No. 12-0021, 2013 WL 149598, at *2 (W. Va. Jan. 14, 2013) (memorandum decision) ("A prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the

53

omnibus habeas corpus hearing;[40] newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively.") (citing *Losh*, 166 W. Va. at 762-63, 277 S.E.2d at 608, Syl. Pt. 4).

Third: The only error in the proceedings below was a sentencing error, specifically, whether the supervised release provisions of West Virginia Code § 62-12-26 (2003) were properly made a part of his sentence. *See* text *infra*. Because this sentencing error was irrelevant to the question of whether the petitioner received a fair trial, the doctrine of cumulative error does not apply. *See State v. Tyler G.*, 236 W. Va. 152, 165, 778 S.E.2d 601, 614 (2015) (citation omitted).

**Sentencing: Applicability of West Virginia Code § 62-12-26**

As set forth *supra*, upon the petitioner's conviction of two counts of sexual abuse in the first degree and two counts of sexual abuse by a parent, guardian or custodian, the circuit court imposed an effective sentence of twenty to forty years imprisonment, at the conclusion of which the petitioner was ordered to serve a term of twenty-five years of supervised release pursuant to West Virginia Code § 62-12-26. That statute provides, in relevant part, that

---

[40] *See* text *supra*. Under the particular facts and circumstances of this case, where the petitioner refused to cooperate with his habeas counsel in any way – or even to acknowledge his right to participate in the case – any deficiencies in the omnibus proceedings must be attributed to the petitioner himself, not to counsel.

> Notwithstanding any other provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of § 61-8-12 of this code or a felony violation of the provisions of § 61-8B-1 *et seq.*, § 61-8C-1 *et seq.*, and § 61-8D-1 *et seq.*, of this code shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to 50 years[.]

The statute was effective as of June 6, 2003, ninety days after its passage.

Although our earlier jurisprudence deemed the statute to be civil and regulatory in nature, akin to the Sex Offender Registration Act,[41] we effectively overruled those earlier pronouncements in *State v. Deel*, 237 W. Va. 600, 788 S.E.2d 741 (2016), unequivocally – and unanimously – concluding that

> [g]iven our recognition in *James [State v. James, 227 W. Va. 407, 710 S.E.2d 98 (2011)]* of the punitive nature of the extended supervised release statute, we now hold that the supervised release statute, West Virginia Code § 62-12-26, provides for an additional penalty to be imposed upon a person who committed of any of the enumerated sex offenses set forth therein.

*Deel*, 237 W. Va. at 607, 788 S.E.2d at 748. Having so construed the statute, we held that

> [a]ny retroactive application of the supervised release statute to an individual who committed any of the enumerated sex offenses prior to the effective date of the supervised release statute violates the constitutional prohibition against ex post facto laws set forth in article III, section 4 of the West Virginia Constitution and Article I, Section 10 of the United States Constitution.

---

[41] W. Va. Code §§ 15-12-1 to -10 (2019).

237 W. Va. at 601, 788 S.E.2d at 742, Syl. Pt. 3, in part. We continued:

> In order to avoid the constitutional prohibition against ex post facto laws, West Virginia Code § 62-12-26 must not be applied to those individuals who committed any of the enumerated sex offenses set forth in the supervised release statute prior to the date the supervised release statute became effective regardless of any contrary language contained in West Virginia Code § 62-12-26.

237 W. Va. at 601, 788 S.E.2d at 742, Syl. Pt. 4; *see also State ex rel. Phalen v. Roberts*, 245 W. Va. 311, __, 858 S.E.2d 936, 945 (2021) ("It is well understood that '[u]nder Ex post facto principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him.'") (citing Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W. Va. 292, 262 S.E.2d 885 (1980)).

We begin our analysis of this issue with a brief recap of the relevant facts. The indictment alleged that "between the __ day of January, 2003 and the __ day of December, 2004," the petitioner committed four offenses in which his daughter, A.A., was the victim. Count 9 alleged that he committed sexual abuse in the first degree by "touching the vagina of A.A. with his hand without the consent of A.A. and the lack of consent was from forcible compulsion[.]" Count 10 alleged that he committed sexual abuse by a parent, guardian, or custodian by "touching the vagina of A.A. without her consent for the sexual gratification of Frank [A.]." Count 11 alleged that he committed sexual abuse in the first degree by "touching the breast of A.A. with his hand without the consent of A.A. and the lack of consent was from forcible compulsion[.]" Count 12 alleged that he committed

56

sexual abuse by a parent, guardian, or custodian by "touching the vagina of A.A. without her consent for the sexual gratification of Frank [A.]."

At trial, despite the Herculean efforts of the prosecutor, she was never able to elicit any testimony putting the offenses involving A.A. into the time frame specified in the indictment.[42] The State's theory was that the offenses had been committed in 2003 and 2004, when the petitioner and his family were living at Maple View Apartments in Clarksburg, West Virginia. Detective Wygal testified that his investigation showed the family moved to Maple View in January 2003 – "[b]ut at least the year 2003 I know they were there."[43] Thereafter, however, A.A. testified that she had "never stayed there [Maple View], really," but rather had lived with her grandmothers while the family was at Maple View; and further that in 2004, Juanita W. and the children (including A.A., until she ran away) were living with Paul W. in Fairmont. A.A. testified that the incidents in which the petitioner touched her vagina or her breasts took place in a trailer in Enterprise, which was where the family lived before moving to Maple View. Thus, although A.A. never gave any dates – or even years – on which the offenses set forth in the indictment had occurred, the

---

[42] There was testimony that put the alleged offenses against J.A. into the timeframe, but the petitioner was acquitted of all those offenses.

[43] Detective Wygal subsequently qualified that broad statement, agreeing that from March to May, 2003, the petitioner had lived in the Parsons Hotel, and that from August 10 until November 3, 2003, he had been in jail.

only reasonable inference which may be drawn from the evidence is that they occurred prior to January, 2003.[44]

The only evidence of an incident involving A.A. which may reasonably be inferred to have occurred after June 6, 2003, came in the context of A.A. explaining why she finally broke her long silence as to the petitioner's abuse of her.

Q. Okay. And so when did you finally tell?

A. When I was 15 I was sitting on the counter. My brother [S.A.] was there. And his friends, [J.G.], [S.G].

. . . .

A. He came up to me and spread my legs apart and told them [inaudible] ass.

Q. When you say "he"?

A. Frank [A.].

Q. Where were you sitting? Are you in the trailer?

A. -- it was in the trailer.

Q. Where were you sitting at the time?

A. On the counter.

---

[44] As noted *supra*, this variance between the dates alleged in the indictment and the dates proved at trial does not affect the validity of the petitioner's convictions, for we have held that "[t]ime is not an element of the crime of sexual assault, the alleged variances concerning when the assaults occurred did not alter the substance of the charges against the defendant." *State v. Samuel S.*, No. 11-0877, 2012 WL 5471448, at *3 (W. Va. Nov. 9, 2012) (memorandum decision) (citing *Miller,* 195 W.Va. at 663, 466 S.E.2d at 514).

Q.     Okay.  Like kitchen counter, bathroom?

A.     Kitchen counter.  Kitchen counter.

A.A. testified that immediately after this incident, she went to a neighbor's home where her mother was visiting and disclosed the petitioner's abuse.  Juanita W. immediately took A.A. to the authorities, and within days, on August 10, 2003, the petitioner was arrested and jailed.  A.A. testified that after her disclosure, the petitioner never sexually abused her again. The record in the 2004 proceedings establishes that the date of disclosure was August 3, 2003.

Assuming, arguendo, that this incident, about which we know nothing other than "[h]e came up to me and spread my legs apart and told them [inaudible] ass," could be considered "sexual contact" within the meaning of West Virginia Code § 61-8B-7 or "sexual exploitation" or "sexual contact" within the meaning of West Virginia Code § 61-8D-5, the fact is that the incident was not charged in the indictment.  Thus, its only significance was to establish that none of the offenses charged in the indictment occurred after August 3, 2003, since A.A.'s undisputed evidence was that the petitioner never sexually abused her again after she disclosed to her mother and the authorities.

We now turn to the contentions of the parties.  The petitioner claims that the evidence at trial failed to establish that any of the charged offenses were committed after June 6, 2003, the effective date of W. Va. Code § 62-12-26, and that the circuit court's imposition of supervised release pursuant to the statute was therefore violative of the

59

constitutional prohibition against ex post facto laws as explicated by this Court in *Deel*.

The State, although acknowledging the principles set forth in *Deel*, argues that there is no

ex post facto violation in the instant case, for two reasons. First, the State contends that in

a habeas corpus proceeding, the burden is on the petitioner to prove that the offenses were

committed before June 6, 2003, rather than the State's burden to prove that they were

committed after that date.[45] We reject this argument. Whether on direct appeal or in a

habeas corpus proceeding, the inquiry on this issue is whether the evidence *presented at*

*trial* establishes, or even supports a reasonable inference, that the offenses were committed

after the effective date of the statute. In short, this is an issue which, like sufficiency of the

evidence or defects in the indictment, to name just a few, can be decided without the

necessity of an evidentiary hearing. Indeed, the issue was reached in *Deel* on plain error

review, because the defendant/petitioner had actually conceded, based on our earlier cases

deeming West Virginia Code § 62-12-26 to be civil and regulatory in nature, that the

imposition of supervised release did not violate the ex post facto clause. *Deel*, 237 W. Va.

at 605, 788 S.E.2d at 746.

Second, the State contends that *Deel* does not apply here because

"[p]etitioner's sexual crimes consisted of *repeated* instances of sexual abuse of A.A. over

---

[45] The circuit court seemingly accepted this argument, holding that "[t]he Petitioner's indictment regarding the crimes against A.A. was from day of January 2003 until day of December 2004. The Petitioner has not shown that his crimes predated the effective date of the statute."

the course of *multiple* years, beginning in A.A.'s 13th year and continuing through A.A.'s 15th year." We reject this argument as well. Although the statement quoted above reflects the State's overarching theory of the case, it does not reflect the charges contained in the indictment, which alleged the commission of four discrete offenses. Every one of these offenses occurred, according to A.A.'s undisputed testimony, in a trailer in Enterprise, West Virginia, prior to the family's move to Maple View Apartments in Clarksburg – a move which, according to Detective Wygal's undisputed testimony, occurred in January, 2003, when A.A. was fourteen years of age. Additionally, A.A. denied having ever lived with the family at Maple View, testifying that she lived with her grandmothers during that time. Finally, the only incident A.A. described which arguably postdated June 6, 2003, was the incident in which the petitioner spread her legs while she sat on a kitchen counter and made some comment which was transcribed by the court reporter as "[inaudible] ass." Assuming, arguendo, that this incident was chargeable as a sexual offense – it was certainly vulgar and disturbing – it was not charged in the indictment and the petitioner was not convicted of it. Therefore, it cannot be the basis for the circuit court's imposition of a period of supervised release pursuant to West Virginia Code § 62-12-26.

As set forth *supra*, the fact that the proof at trial was inconsistent with the allegations in the complaint, not as to the elements of the crimes[46] but as to the dates on which the crimes were committed, does not affect the validity of the petitioner's

---

[46] *See* text *supra.*

convictions because "time is not an element of the offenses with which the [petitioner] was charged." *State v. David D.W.*, 214 W. Va. 167, 173, 588 S.E.2d 156, 162 (2003) (citing *State ex rel. State v. Reed*, 204 W. Va. 520, 523, 514 S.E.2d 171, 174 (1999). However, "[f]or purposes of assessing constitutional rights under the ex post facto clause of any penal statute intended to punish a person, the triggering date is the date of the offense." *Deel*, 237 W. Va. at 608. 788 S.E.2d at 749. Therefore, the State's failure in the criminal proceedings below to establish that any of the charged offenses were committed after the effective date of West Virginia Code § 62-12-26 is fatal to its argument that the circuit court's imposition of a period of supervised release passed constitutional muster.

## IV. CONCLUSION

For the foregoing reasons, we reverse only the circuit court's imposition of a period of supervised release as part of the petitioner's sentence, and remand this case for entry of a new sentencing order eliminating any penalty imposed pursuant to West Virginia Code § 62-12-26. We affirm the judgment of the circuit court's denial of habeas corpus relief on all other issues raised by the petitioner and/or his counsel, including all *Losh* grounds on which the petitioner offered no argument or evidence at the omnibus hearing.

Affirmed, in part; Reversed, in part, and remanded for entry of a new sentencing order.

62